344 N.W.2d 464 (1984)
216 Neb. 504
STATE of Nebraska ex rel. NEBRASKA STATE BAR ASSOCIATION, Relator,
v.
Thomas C. DOERR, Respondent.
No. 83-142.
Supreme Court of Nebraska.
February 17, 1984.
*465 Alison L. Larson, Lincoln, for relator.
Charles F. Gotch of Cassem, Tierney, Adams, Gotch & Douglas, Omaha, for respondent.
KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, District Judge, Retired.
PER CURIAM.
This is an original proceeding wherein the Nebraska State Bar Association, relator, filed formal charges against Thomas C. Doerr, respondent, who was admitted to the practice of law in this state on June 24, 1960.
Formal charges in two counts were filed against respondent in this court on February 24, 1983.
With respect to the first count respondent was engaged, sometime prior to August 30, 1977, to probate the last will and testament of one Louis Henry Heil, respondent's great-uncle. On August 30, 1977, Martha Bohlsen, an aunt of the respondent, was appointed as the personal representative and trustee for the testamentary trusts created by the will. Bohlsen left the estate, which had a value of approximately a quarter of a million dollars and was to be distributed to 22 beneficiaries, entirely in respondent's hands. Among the testamentary trusts to be created was one for the Lutheran Family and Social Service of Nebraska. Bohlsen was named as trustee. Several requests, beginning in December 1981, by Lutheran Family Service for information concerning why it had received no money went unanswered. On April 15, 1982, Lutheran Family Service filed a petition in the Douglas County Court, which sought an accounting and removal of Bohlsen as trustee. Neither respondent nor Bohlsen appeared at the hearing as originally scheduled. When the hearing was ultimately held, respondent appeared and represented that he would forthwith file an estate accounting and report. Such did not occur, and on December 14, 1982, the trustee was replaced and Lutheran Family Service filed another petition to remove the personal representative. On December 30, 1982, the court removed Mrs. Bohlsen as personal representative as well and appointed *466 a successor personal representative. The successor representative continued to encounter difficulties in obtaining from respondent the documents and other information required to make an accounting and report for the estate and to file certain tax returns for the years 1977 through 1982 which respondent had failed to file. By August of 1983 the successor representative was successful in obtaining the necessary information. Although there was no evidence of misappropriation of estate or trust assets, the documents supplied by respondent to the successor representative established that estate and trust funds had not been properly segregated from other funds.
The foregoing conduct resulted in the charge that respondent violated the oath of his office requiring that as an attorney he faithfully discharge his duties and refrain from impeding or obstructing the administration of justice. Neb.Rev.Stat. § 7-104 (Reissue 1977); State ex rel. Nebraska State Bar Assn. v. McArthur, 212 Neb. 815, 326 N.W.2d 173 (1982). He was also charged with violating disciplinary rules 1-102, 6-101, and 9-102 of the Code of Professional Responsibility. These disciplinary rules provide in part as follows: "DR 1-102.... A. A lawyer shall not: 1. Violate a Disciplinary Rule.... 4. Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."
"DR 6-101.... A. A lawyer shall not:... 3. Neglect a legal matter entrusted to him."
"DR 9-102.... B. A lawyer shall: 1. Promptly notify a client of the receipt of his funds, securities, or other properties. 2. Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable. 3. Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them. 4. Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."
As to the second count, the record establishes that respondent was retained on February 9, 1982, by Barbara and Gary Keiser to defend a suit which had been filed against them on January 25, 1982, in the district court for Douglas County, Nebraska. A default judgment was taken against the Keisers on April 6, 1982, as a consequence of respondent's failure to act in accordance with his engagement. On July 9, 1982, the Keisers filed suit against the respondent, seeking to recover from him the amount of their loss. Respondent paid to the plaintiffs the amount for which they prayed.
As a result of the foregoing conduct, respondent was charged with the violation of his oath of office and with violating disciplinary rules 1-102 and 6-101, as set forth above.
On March 4, 1983, a third count was filed against respondent in this court. In connection therewith the record shows that respondent failed to timely respond and deliver trust funds to the heirs of one Rose Veylupek, who died in May of 1982. The funds had been put in trust prior to June 26, 1956, by respondent's father, also a lawyer. Respondent had continued to hold the funds in trust following his father's death in 1974. After Mrs. Veylupek's death her son made several written requests concerning an accounting of those trust assets. Doerr failed to respond. After a complaint was filed against him on January 17, 1983, the funds were distributed to the heirs of Mrs. Veylupek on July 27, 1983.
As a result of the conduct which is the subject of the third count, respondent was charged with violating his oath of office and with violating disciplinary rules 1-102, 6-101, and 9-102. In connection with this count disciplinary rule 1-102 provides that a lawyer shall not violate a disciplinary rule nor "6. Engage in any other conduct that adversely reflects on his fitness to practice law." The language of disciplinary rules *467 6-101 and 9-102 related to this count is as previously set forth.
In addition, the record reflects that on November 17, 1981, respondent was privately reprimanded for his failure to handle other estates with reasonable dispatch. The record does not reveal the number or the details of those transactions.
Respondent was inattentive to the disciplinary proceedings resulting in the charges presently before us, including being a full 1½ hours late at the hearing before the Committee on Inquiry of the Second Disciplinary District held on January 13, 1983.
Respondent does not dispute the conduct charged against him. His explanation essentially is that he was not suited by temperament, experience, or training to carry out his professional engagements. He argues that upon graduation from law school he joined his father in the practice of law, but was permitted to do little more than function as a law clerk; he was neither permitted to interview clients nor to appear in court. In short, he was not allowed to develop as a lawyer. Consequently, he is not comfortable with adversarial proceedings. He was not trained nor required to keep regular office hours, although he did work in an office maintained at his home. A fire at his home in late 1979 impaired his ability, for a period of about 3 months, to devote himself to his practice, and damaged his papers, including those involved in the Heil estate. In addition, his wife's health was such that his family obligationsthere are three childrendemanded much of his time, and more than is the usual case.
He assures us he now limits his practice to matters he is competent to handle and that he is current on all of his engagements. Attorney James Nanfito, with whom respondent has shared offices since his admission to practice, has offered to assist respondent, and reports that respondent has made progress in assuming the management of his practice. Mr. Nanfito, to his credit, has indicated a willingness to continue to help respondent discharge his professional duties.
At the suggestion of his attorney in these proceedings, respondent was examined on April 18, 1983, by Dr. Merle E. Sjogren, a psychiatrist. Dr. Sjogren found that respondent has a keen intellect, testing in the 93d to 97th percentile mental ability range. He demonstrates no psychopathology or thought process disorder, but did show "some leveling of his enthusiasm," which Dr. Sjogren associated with a mild depression which respondent "was very resistive to dealing with." Dr. Sjogren found respondent to have a "procrastinating type of personality" and had "some emotional crisis which was reactive to a situational work stress variable." According to Dr. Sjogren, respondent "doesn't particularly appreciate the legal profession... and he feels very uncomfortable in it as it is, he would prefer to be in mechanical type of legal work which would be, according to him [respondent], patent type of attorney but there is very little of that in this locality." Dr. Sjogren stated that "it may be necessary for him [respondent] to consider a different vocation which may be risky in an individual of this age."
The real question in this case is one of determining what disciplinary sanction is appropriate. As we have observed in the past, in determining whether and to what extent discipline should be imposed, it is necessary that we consider the nature of the offense, the need for deterring others, the maintenance of the reputation of the bar as a whole, the protection of the public, the attitude of the offender generally, and his present or future fitness to continue in the practice of law. State ex rel. Nebraska State Bar Assn. v. McArthur, 212 Neb. 815, 326 N.W.2d 173 (1982). We have also declared that cumulative acts of misconduct are distinguishable from isolated incidents of neglect and therefore justify more serious sanctions. State ex rel. NSBA v. Frank, 214 Neb. 825, 336 N.W.2d 557 (1983).
The referee appointed by this court recommended that respondent's license to practice law be suspended for 1 year. It is *468 clear, however, that this court has the obligation to review the evidence de novo upon the record and to determine if discipline should be imposed and, if it should, the extent thereof. State ex rel. NSBA v. Frank, supra.
This is not a case which involves dishonesty or other moral turpitude. But such are not the only grounds for disciplining lawyers. We have held on prior occasions that violation of any of the ethical standards relating to the practice of law, or any conduct of an attorney which tends to bring the courts or legal profession into disrepute, constitutes grounds for suspension or disbarment. State ex rel. Nebraska State Bar Association v. Walsh, 206 Neb. 737, 294 N.W.2d 873 (1980); State ex rel. Nebraska State Bar Assn. v. Ledwith, 197 Neb. 572, 250 N.W.2d 230 (1977).
It is also true that although respondent initially failed to respond to the bar's concerns about his conduct, he now has devoted his attention to these proceedings. The fact remains, however, that the evidence establishes not sporadic, isolated acts of procrastination but, rather, a long-established pattern of neglecting professional engagements. We have held that an attorney who neglects a matter entrusted to him has failed to act competently. State ex rel. Nebraska State Bar Assn. v. Divis, 212 Neb. 699, 325 N.W.2d 652 (1982). Respondent has had 24 years in which to learn and understand the nature and demands of his profession. He has failed to do so. We see nothing which convinces us that respondent has, or ever will, acquire the characteristics required of a practicing attorney. Members of the public who entrust their affairs to those licensed to practice law in this state are entitled, among other things, to have them attended to in a reasonably timely fashion.
We do not believe that suspension of respondent's license would serve any useful purpose in this case. While a suspension would punish respondent and likely deter others, the resulting period of professional inactivity would not further respondent's understanding of the requirements and demands of the practice of law.
When we balance the need to protect the public, the nature of respondent's offenses, the need for deterring others, and the reputation of the bar as a whole against respondent's interest in preserving his privilege to practice law, we must conclude that the only appropriate judgment is to disbar the respondent. Accordingly, we enter a judgment of disbarment.
JUDGMENT OF DISBARMENT.
CAPORALE, Justice, dissenting in part.
I agree that respondent's conduct is such that disciplinary action is appropriate. I also agree with the clear implication of the majority opinion that justice cannot, and this jurisdiction will not, tolerate interminable procrastinations. In my mind such should certainly be the case. Indeed, such should be the case whether unreasonable delay be practiced by the lawyers who serve justice or the judges who administer it.
It seems to me, however, that the sanction in this case is entirely too harsh, unnecessary, and disproportionate to what has been done in the past. At the very moment when, after two dozen years, respondent demonstrates a glimmer of understanding the nature and requirements of his profession, we make it impossible for him to demonstrate that he is indeed capable of serving the public as a lawyer.
Less than a year ago, we suspended for 1 year one who had accepted a retainer from his client, failed to render the service for which he was retained, lied to his client about his inactivity, and, in a separate matter, failed to disclose the withdrawal of estate funds. State ex rel. NSBA v. Tomek, 214 Neb. 220, 333 N.W.2d 409 (1983). In State ex rel. Nebraska State Bar Assn. v. Divis, 212 Neb. 699, 325 N.W.2d 652 (1982), we publicly reprimanded and placed on probation for 1 year a member of the bar who failed to "act competently by neglecting a matter entrusted to him." Id. at 700, 325 N.W.2d at 653. I recognize that there is both a quantitative and qualitative *469 difference between the isolated acts presented by the record in Divis and the series of inordinate procrastinations presented by this record. Nonetheless, it seems to me that sacrificing respondent's professional life without first giving him an opportunity to remedy his conduct is too high a tax to impose in order that others may be deterred or the bar's reputation protected.
The public could be protected and all other purposes of discipline served by publicly censuring respondent and placing him on probation for a period of 3 years, during which period he would be subject to disbarment should he lapse into his old habits. The terms of probation would require that he procure and maintain malpractice insurance in an amount not less than $500,000; institute and maintain a calendar control system for all professional engagements; display such system to Counsel for Discipline of the Nebraska State Bar Association; and submit to monitoring of continuing compliance with the conditions of probation by Counsel for Discipline or his designate, with any material deviation therefrom to be reported to this court for appropriate action.
SHANAHAN, J., joins in this dissent.